UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| STEPHEN A. BYRD, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00504-JPH-DLP |
| | ) | |
| BRITTNEE SMITH, | ) | |
| JODEANA RANEY, | ) | |
| THOMAS WELLINGTON, | ) | |
| KEVIN GILMORE, | ) | |
| FRANK LITTLEJOHN, | ) | |
| DANITA REED, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY SCREENING COMPLAINT, DISMISSING INSUFFICIENT CLAIMS,
AND DIRECTING SERVICE OF PROCESS**

Plaintiff, Stephen Byrd, Sr., an inmate at the Wabash Valley Correctional Facility

("WVCF"), filed his complaint pursuant to 42 U.S.C. § 1983 on September 28, 2020. Dkt. 2.

Because the plaintiff is a "prisoner" as defined by 28 U.S.C. 1915A(c), this Court has an obligation

under 28 U.S.C. § 1915A(a) to screen his complaint before service on the defendants.

**I. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of

the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief

against a defendant who is immune from such relief. In determining whether the complaint states

a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive

dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a
> claim for relief that is plausible on its face. A claim has facial plausibility when the

> plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## II. The Complaint

The Court notes the difficulty in discerning a clear and concise account of the factual events, allegations, and claims presented by Mr. Byrd in his filing of an eighteen-page complaint accompanied by forty-nine pages of exhibits. "A buckshot complaint that would be rejected if filed by a free person . . . should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In this Entry, the Court evaluates only those claims that are articulated in "a short and plain statement," Fed. R. Civ. P. 8(a)(2), and supported by specific factual allegations, *Iqbal*, 556 U.S. at 678, as required.

Mr. Byrd seeks compensatory and punitive damages and injunctive and declaratory relief. Dkt. 2. He names the following employees at WVCF as defendants in their individual and official capacities: (1) Brittnee Smith, Food Service Manager; (2) Jodeana Raney, Prison Rape Elimination Act ("PREA") Compliance Manager; (3) Thomas Wellington, Grievance Supervisor; (4) Kevin Gilmore, Deputy Asst. Warden; (5) Frank Littlejohn, Deputy Asst. Warden; and (6) Danita Reed, Mental Health Services. *Id.* Mr. Byrd's allegations with respect to each defendant are discussed below.

### A. Brittnee Smith

The crux of Mr. Byrd's complaint involves the alleged conduct of Food Service Manager, Brittnee Smith. Mr. Byrd alleges that Ms. Smith retaliated against him and subjected him to cruel and unusual punishment "by spreading false rumors among the intake workers" by labeling him as

a "snitch" that created a risk to his safety. *Id.* at 3. Further, he alleges that Ms. Smith used "work performance evaluations as [a] disciplinary and retaliatory mechanism to impose disciplinary sanctions without due process." *Id.* at 4. Mr. Byrd asserts that Ms. Smith's actions against him are "a consequence of several grievances filed by [him] on Smith and other Aramark staff[1] for harassment[.]" *Id.* at 6. On June 25, 2020, Mr. Byrd filed a grievance against Ms. Smith[2] directly, to request that an investigation be conducted regarding her conduct towards him. *Id.* at 9.

Mr. Byrd's complaint then discusses "a situation stemming from a sexual relationship [he] had with an Aramark staff member who quit after the relationship ended[.]" *Id.* at 6. An investigation was conducted, a PREA report was generated, and the report was substantiated by the PREA review team. *Id.* at 8. In his grievance against Ms. Smith he states that "it should be noted that recent events regarding Smith and I bears significant nexus to the previously filed PREA claim on Smith's staff member." *Id.* at 9.

The day after Mr. Byrd filed his grievance against Ms. Smith, he alleges she called him to a meeting and gave him "an ultimatum to either sign re-class papers to come over to work for Aramark, or be fired, sit at least ninety (90) days idle w/o any state-pay, and his housing status changed." *Id.* at 10. Mr. Byrd stated he did not feel comfortable working for Aramark given his "history." *Id.* Mr. Byrd alleges that Ms. Smith told him she was going to do a work evaluation on him and that he would find out why when he got the evaluation. *Id.* He states Ms. Smith gave him

---

[1] On April 13, 2020, Mr. Byrd filed a grievance against an Aramark staff member not named in this action regarding an incident in the dining hall in which he was instructed he had to wear a mask at all times, contrary to instructions from Ms. Smith. *Id.* at 6. After the grievance was routed to Ms. Smith by her supervisor, she discussed the matter with Mr. Byrd and deemed the issue informally resolved. *Id.* Mr. Byrd was dissatisfied with the response and felt that "Smith was covering up for, and protecting" the employee and filed a Level II appeal. *Id.*

[2] Mr. Byrd stated in this grievance that Ms. Smith called him lazy, speaks to him in inflammatory and derogatory terms, and uses "food as a mechanism to sow discord among the offender staff and create a hostile work environment that does not promote a positive work ethic." *Id.* at 9.

a bad evaluation and falsely indicated on the evaluation form that she had discussed the review with him. *Id.* at 11. Four days later, Mr. Byrd states he was reclassified under the "bogus" evaluation. *Id.* On June 30, 2020, he again filed a grievance against Ms. Smith directly, requesting an investigation for harassment, retaliation, and using derogatory and inflammatory statements towards him. *Id.*

### B. Additional Defendants

#### 1. Frank Littlejohn, Kevin Gilmore, Thomas Wellington

Mr. Byrd alleges that Frank Littlejohn and Kevin Gilmore were informed of Ms. Smith's conduct and had the opportunity to intervene, prevent, or stop it but failed to do so. *Id.* at 4. Mr. Byrd filed a classification appeal with Mr. Littlejohn and Mr. Gilmore. *Id.* at 12. Mr. Byrd's appeal was denied because he refused a work assignment and was reclassified per policy. Dkt. 2-7. He further alleges that Thomas Wellington[3] was on notice of Ms. Smith's conduct and the actions of the other named defendants and failed to take action. Dkt. 2 at 4.

Mr. Byrd additionally claims that during the process of finishing his draft complaint in this action, Kevin Gilmore upheld a suspension of Mr. Byrd's access to the law library computers.[4] *Id.* at 14. He claims he was denied physical access to the law library on two occasions and was suspended from the computers for 90 days out of retaliation. *Id.* at 5.

---

[3] According to the grievance exhibits, Mr. Wellington returned Mr. Byrd's grievance stating that it was too lengthy and needed to pertain to him only, and not reference a group. Dkt. 2-6. In a later request for interview addressed to Mr. Wellington in which Mr. Byrd stated he was grieving retaliation, Mr. Byrd was instructed that his issue was one of classification, and he could file a classification appeal. *Id.*

[4] Mr. Byrd's grievance on September 21, 2020 indicated he was denied access to the law library in retaliation for complaints on J. Gilbert, an individual not named in this lawsuit. Dkt. 2-8. The response on September 22, 2020, from B. Hinton indicated that Mr. Byrd was not being obstructed access to the courts, he just could not have access to the computer. *Id.* There are no documents to indicate Mr. Gilmore's response, only Mr. Byrd's statement that Mr. Gilmore upheld the suspension.

### 2. Jodeana Raney and Dr. Danita Reed

Mr. Byrd alleges that Jodeana Raney,[5] the PREA Compliance Manager at WVCF, was aware of Ms. Smith's conduct and had the opportunity to intervene, prevent, or stop it but failed to do so. *Id.* at 5.

Mr. Byrd also contends that Dr. Danita Reed, in her capacity with mental health services, knew that a problem existed with Ms. Smith and failed to take action. *Id.* at 5. He had been referred to mental health and evaluated by Dr. Reed after the PREA report. *Id.* at 8. A request for health care form indicates that Dr. Reed saw Mr. Byrd on June 24, 2020, and addressed his concerns, after his request that simply said he had anxiety and stress from experiencing retaliation. Dkt. 2-4. Mr. Byrd states that on July 30, 2020, he was forced to choose whether to see Dr. Reed for an appointment or access the law library session, and it is unclear if there was additional interaction with Dr. Reed at this point. Dkt. 2 at 15.

### III. Discussion of Claims

### A. Retaliation Claims

The First Amendment protects prisoners from retaliatory actions that are likely to deter them from engaging in protected First Amendment activity. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To state a First Amendment retaliation claim, the plaintiff must allege that the defendant's conduct "would likely deter a person of ordinary firmness from continuing to engage

---

[5] On July 20, 2020, Mr. Byrd filed a formal notice of grievance with Ms. Raney stating that Mr. Wellington refused to address his concerns and it seemed "as though he has difficulty understanding the gravamen" of the issue. Dkt. 2-10. In this grievance, he states that Ms. Smith falsified a state document, "mischaracterized" the work evaluation, and was "disingenuous on her review." *Id.* When Ms. Raney did not call Mr. Byrd to address his concerns, he filed a request for interview to Ms. Raney inquiring about who implemented the PREA at the facility, in which she responded she was the PREA Compliance Manager and gave him the individuals and departments included on the PREA committee. Dkt. 2-11.

in protected activity" and that his potential speech was "at least a motivating cause" of the defendant's retaliatory action. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011).

### 1. Brittnee Smith

Based upon Mr. Byrd's allegations that Ms. Smith spread false rumors about him including that he was a "snitch," subjected him to harassment, used derogatory and inflammatory language toward him, and completed a bad work evaluation against him due to his filing of grievances (the exercise of protected activity), against her and other Aramark staff, his **First Amendment retaliation claim against Ms. Smith shall proceed**.

### 2. Kevin Gilmore

Mr. Byrd alleges that Mr. Gilmore knew that he was drafting his complaint in this action, and thus, upheld a previous suspension of his access to the law library and computers. Liberally construed, these allegations are sufficient to plausibly assert a **First Amendment retaliation claim which shall proceed**. However, the Court distinguishes this claim from any denial of access to courts claim, which Mr. Byrd has not sufficiently pled and is discussed in Part III(B), the dismissed claims.

### B. Dismissed Claims

### 1. Eighth Amendment Claims Against Ms. Smith

Mr. Byrd alleges that some of Ms. Smith's conduct, *e.g.*, falsely referring to him as a "snitch" or a "rat," created an excessive risk to his safety. Dkt. 2 at 3. Mr. Byrd does not allege that any risk to his safety materialized and therefore has not stated an Eighth Amendment claim against her. *See, e.g., Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004) (holding that the defendant correctional officer did not violate the Eighth Amendment by telling other inmates that the plaintiff "was a snitch, thereby placing him at risk of assault" because the risk of an assault

never materialized; "[t]he standard in this circuit is clear: an inmate who suffers only a risk of physical harm has no compensable claim under the Eighth Amendment").

Moreover, a prisoner has no property or liberty interest in prison employment. *See, e.g., Wallace v. Robinson*, 940 F.2d 243, 248 (7th Cir. 1991) (en banc) (prisoner has no constitutional right to particular job assignment). As such, an inmate does not have a constitutional right to an honest work evaluation. So long as a termination from a prison job is not based on impermissible factors such as race, religious affiliation, or retaliation for participation in a protected activity, the denial of or removal from that job does not create a cognizable ground for relief under due process. Similarly, the denial of a job does not violate the Eighth Amendment. Thus, to the extent Mr. Byrd intends to bring an Eighth Amendment claim against Ms. Smith, it is **dismissed for failure to state a claim upon which relief can be granted.**

### 2. Access to Court Claims

"Prisoners have a fundamental right of access to the courts," and prison staff "may not impinge on a prisoner's efforts to pursue a legal claim[.]" *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012). However, "to satisfactorily state a claim or an infringement of the right of access, prisoners must also allege an actual injury." *Id.* "That is, they must allege that some action by the prison has frustrated or is impeding an attempt to bring a nonfrivolous legal claim." *Id.* at 661. Here, Mr. Byrd has not alleged with specificity what nonfrivolous legal claim has been frustrated by Mr. Gilmore's actions. *Lewis v. Casey*, 116 S. Ct. 2174, 2179 (1996) ("[T]o state a right to access to courts claim and avoid dismissal under Rule 12(b)(6), a prisoner must make specific allegations as to the prejudice suffered because of the defendant's alleged conduct.").

Mr. Byrd was able to file his complaint, albeit a portion of it was handwritten. His suspension of access to the facility's computers did not leave him without access to the Court. He

has not made any allegations of an actual injury. Thus, to the extent Mr. Byrd intends to bring an access to courts claim against Mr. Gilmore, it is **dismissed for failure to state a claim upon which relief can be granted**.

### 3. Failure to Intervene or Investigate

Mr. Byrd alleges that the remaining defendants "had a realistic opportunity to stabilize, intervene, prevent or stop the misconduct, harassment and retaliation of Smith from occurring, had a duty to, and failed to do so." Dkt. 2 at 4–5. In order to plead a failure to intervene claim, Mr. Byrd would have to show that these defendants (1) knew of the underlying constitutional violation and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). From Mr. Byrd's allegations, the Court construes that the underlying constitutional violation is that Ms. Smith allegedly used a bad work evaluation to reclassify him because of his use of the grievance process. However, through Mr. Byrd's own exhibits, *e.g.*, in a letter written to defendants Littlejohn and Gilmore to supplement his classification appeal, Mr. Byrd wrote that he "think[s] that if your office were to investigate, and factor everything, you could reasonably conclude that Smith's actions reflect a high probability that her motives were fueled by emotion." Dkt. 2-7 at 9. This exhibit illustrates, and Mr. Byrd's broad allegations do not contradict, that these defendants did not know about his reclassification until *after* it happened and were not aware of or involved in any work evaluation completed by Ms. Smith prior to it being completed. Thus, Mr. Byrd's factual allegations do not show how Gilmore and Littlejohn had a realistic opportunity to prevent Ms. Smith's actions. Similarly, Mr. Byrd has made no such showing as it relates to any of the other named defendants either.

A "plaintiff's factual allegations must be enough to raise a right to relief above the speculative level." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007)). The Court "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* Mr. Byrd's abstract recitations of a failure to intervene claim do not meet this pleading threshold. Moreover, it is unlikely that these defendants have any supervisory role over a kitchen employee, and even if they were supervisors, liability has not been shown. *See, e.g., Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly.").

At most, the exhibits indicate that the defendants reviewed and responded to his classification appeal or his grievances or letters seeking an investigation of Ms. Smith. *See, e.g.*, dkt. 2-6 (request for interview seeking investigation); dkt. 2-7 (classification appeal letter); dkt. 2-10 (letter to PREA Coordinator requesting review of work evaluation and Wellington's treatment of his grievances). Though Mr. Byrd requested an investigation into the matter, he is not entitled to one. It is well settled that denying an inmate's grievance or refusing to investigate an incident after the fact does not by itself, amount to a constitutional violation. *See, e.g., McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013) ("McGee's claims against . . . the individuals who ruled against McGee on the institutional grievances he filed . . . fail as a matter of law."); *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Accordingly, claims based on allegations that the remaining defendants, including Gilmore and Littlejohn, did not intervene, investigate, or favorably respond to letters or grievances

regarding Ms. Smith are **dismissed for failure to state a claim upon which relief may be granted**.

### 4. Classification and PREA Claims

Further, to the extent Mr. Byrd attempts to bring claims against these defendants regarding his classification status or the results of his classification appeal, **these claims are dismissed for failure to state a claim upon which relief may be granted**. Mr. Byrd has no right to any classification, job, or program. *See, e.g.*, *Lucien v. DeTella*, 141 F.3d 773, 774 (7th Cir. 1998) ("Classifications of inmates implicate neither liberty nor property interests.") Other sanctions, such as confinement in segregated housing, transfer to a different prison, or a change in classification do not deprive the prisoner of a protected interest and therefore "raise no due process concerns." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).

To the extent Mr. Byrd alleges that any of the named defendants violated obligations set forth under the PREA, these claims fail. The PREA does not create an individual right to sue for damages. *See Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015) (collecting cases); *Truly v. Moore*, No. 16-cv-783-NJR, 2017 WL 661507, at *4 (S.D. Ill. Feb. 17, 2017). Accordingly, **any claim based on a PREA violation is dismissed for failure to state a claim upon which relief may be granted.**

### IV. Issuance of Process

**The clerk is directed** to issue process to defendants (1) Brittnee Smith and (2) Kevin Gilmore in the manner specified by Federal Rule of Civil Procedure 4(d). Process shall consist of the complaint (docket 2), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry. The **clerk is directed** to serve Kevin Gilmore, an IDOC employee, electronically.

## V. Conclusion and Further Proceedings

The only claims identified by the Court are those outlined in Part III(A). All other claims are dismissed. If Mr. Byrd believes he asserted claims that are not discussed in Part III, he shall have **through May 28, 2021**, in which to file an amended complaint. The amended complaint will completely replace the original complaint. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture.").

**The clerk is directed to terminate** as defendants Jodeana Raney, Thomas Wellington, Frank Littlejohn, and Danita Reed on the docket.

**The clerk is directed to serve a courtesy copy** of this Entry on Christopher Cody, attorney.

**SO ORDERED.**

Date: 4/29/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

STEPHEN A. BYRD, SR.
250641
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Christopher Douglas Cody
Hume Smith Geddes Green & Simmons
54 Monument Circle, 4th floor
Indianapolis, IN 46204

Brittnee Smith
Aramark Food Service Manager
Wabash Valley Correctional Facility
6908 S. Old Hwy 41
Carlisle, IN 47838

Electronic service to Indiana Department of Correction:

Kevin Gilmore